UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No: 4:13-CR-72-BR
No. 4:15-CV-71-BR

| | |
|---|---|
| OLANITAN MICHAEL OLANIYI )  )  ) v.                                              )  ) UNITED STATES OF AMERICA         )  ) | ORDER |

This matter is before the court on the government's motion to dismiss petitioner's 28 U.S.C. § 2255 motion. (DE # 83.) Petitioner has filed a response in opposition to the government's motion, (DE # 86), as well as a motion for discovery, (DE # 87).

Pursuant to a plea agreement, which contains an appellate waiver, petitioner pled guilty to one count of conspiracy to commit mail, wire, and bank fraud and one count of aggravated identity theft. By judgment entered 8 August 2014, petitioner was sentenced to a total term of 87 months imprisonment. Petitioner appealed his convictions and sentence. By mandate issued 10 April 2015, the Fourth Circuit Court of Appeals affirmed. (DE # 72.)

Petitioner timely filed his § 2255 motion on 27 April 2015. (DE # 75.) In response, the government filed the instant motion to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the government contends that petitioner has failed to state any claim entitling him to relief.

> It is well established that a motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, and that the legal sufficiency is determined by assessing whether the complaint contains sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." This plausibility standard requires only that the complaint's factual allegations "be enough to raise a right to relief above the speculative level."

Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015) (citations omitted). This same standard applies equally to a Rule 12(b)(6) motion challenging a § 2255 motion. See Walker v. Kelly, 589 F.3d 127, 138-39 (4th Cir. 2009) (recognizing that the standards of Rule 12(b)(6) apply to the government's motion to dismiss a habeas corpus motion under § 2254).

Petitioner asserts the following grounds for relief in his § 2255 motion: (1) his guilty plea and appellate waiver were involuntary and unintelligent due to ineffective assistance of counsel; (2) ineffective assistance of counsel based on "counsel's failure to subject [the] prosecution's case to meaningful adversarial testing"; (3) ineffective assistance of counsel regarding speedy trial rights; and (4) ineffective assistance of counsel at sentencing.

All of petitioner's grounds for relief allege some form of ineffective assistance of counsel. With regard to any claim based on ineffective assistance of counsel,

> a person must show (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that he experienced prejudice as a result, meaning that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L .Ed. 2d 674 (1984). A different inquiry is necessary with respect to the prejudice prong, however, where a conviction is based upon a guilty plea. In that situation, a person must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." In discussing "the importance of protecting the finality of convictions obtained through guilty pleas," the Supreme Court recently declared that "[s]urmounting *Strickland's* high bar is never an easy task."

United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (most citations omitted). The court examines each ground for relief in turn.

Although the government characterizes petitioner's first ground for relief as three separate claims for ineffective assistance of counsel, rather than a singular claim contesting the voluntariness of his guilty plea and appellate waiver, the court agrees with the government that

2

this claim (or claims) should be dismissed. Petitioner initially challenges his guilty plea and appellate waiver based on the plea agreement not reflecting the amount of loss to which the parties agreed. According to petitioner, he refused to agree to a loss amount of $200,000-$400,000 as originally provided in the plea agreement. (Mem., DE # 75-1, at 3; see also Resp., DE # 86, at 7-8.) After speaking with the prosecutor, counsel informed petitioner that the government had agreed to a loss amount of $30,000-$70,000. (Mem., DE # 75-1, at 3.) Counsel then struck the provision in the plea which provided the amount of loss was $200,000-$400,000, and both counsel and petitioner initialed this alteration. (Id.; see also Pl. Ag., DE # 43, ¶ 5(b).) Petitioner contends that because counsel did not prepare a new memorandum of plea agreement to reflect the agreed amount of loss of $30,000-$70,000, petitioner received a fourteen-point sentencing guideline enhancement,[1] rather than a six-point enhancement he had bargained for or a twelve-point enhancement had the original amount of loss not been stricken. (Mem., DE # 75-1, at 3-5; Resp., DE # 86, at 8-9.)

The court agrees with the government that petitioner cannot successfully challenge his plea on this basis because of the plain language of the plea agreement and the statements he made at the plea hearing. The plea agreement specifically provides, "This Memorandum constitutes the full and complete record of the Plea Agreement. There are no other agreements between the parties in addition to or different from the terms herein." (Pl. Ag., DE # 43, ¶ 1.) At the plea hearing, the court questioned petitioner extensively about the terms of the plea agreement and petitioner's understanding of it. The following colloquy occurred between the

---

[1] The amount of intended loss was determined to be $413,656.63, resulting in a fourteen-level increase to petitioner's base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H) (2013). (See PSR, DE # 50, ¶ 61.) Counsel objected to this enhancement, (PSR Add., DE # 50, ¶ 5; 8/4/14 Tr., DE # 69, at 3, 14); however, the court overruled the objection, (8/4/14 Tr., DE # 69, at 16).

3

court and petitioner.

> Q I have been given a typewritten memorandum of plea agreement consisting of eight pages, the last page of which appears the signature of your lawyer, Mr. Hawes, and Ms. Menzer, the government lawyer, and on page seven of which appears apparently your signature on the line above where your name is typed, Olanitan Michael Olaniyi. Is that your signature?
> A Yes, your honor.
> Q Before you signed this document, did you read it?
> A Yes, I did, your honor.
> Q Did you go over it with your lawyer?
> A Yes, your honor.
> Q I take it then that you feel as if you understand its contents; is that correct?
> A Yes, your honor.
> Q I want you to listen very carefully now because I'm going to state for the public record my understanding of what this memorandum of plea agreement provides. I'm not going to read it in its entirety, I'm just going to summarize it. If I leave out something that you consider to be of particular importance or, more importantly, if I state something differently from your understanding of what the agreement provides, I want you to bring that to my attention so that we can talk about it, okay?
> A Okay, your honor.

(3/25/14 Tr., DE # 68, at 9-10.)

The court then stated its understanding of the pertinent terms of the plea agreement, at the conclusion of which the court asked petitioner, "Have I fairly and accurately summarized the terms and conditions of this agreement as you understand it?"  (Id. at 13.)  Petitioner responded, "Yes, your honor."  (Id. at 14.)  The court then asked petitioner, "Has anyone told you anything at all to get you to sign this agreement other than what appears on the pages of the agreement itself?"  (Id.)  Petitioner responded, "No, your honor."  (Id.)  Finally, the court asked petitioner, "Have you answered all of my questions truthfully?"  (Id.)  Petitioner responded affirmatively.  (Id.)

Petitioner is bound by the sworn statements he made at the plea hearing.  United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).  The court cannot credit petitioner's

4

statements to the contrary, and petitioner's knowing and voluntary plea will not be disturbed based on any purported outside agreement concerning the amount of loss. See id. at 222-23.

As another basis for attacking the voluntariness of his plea and appellate waiver, petitioner contends that he did not want to waive his right to appeal, but did so on counsel's promise that petitioner would not need to appeal because he would receive a 50% sentence reduction based on a downward departure pursuant to U.S.S.G. § 5K2.16. (Mem., DE # 75-1, at 6; Resp., DE # 86, at 13-14.) Such a contention is belied by petitioner's statements at the plea hearing. At the plea hearing, as noted previously, the court stated the pertinent terms of the plea agreement, including the appellate waiver, (3/25/14 Tr., DE # 68, at 12). Also, as noted above, petitioner acknowledged no one had told him anything to get him to sign the plea agreement other than what appeared in the agreement. Further, the court and petitioner engaged in the following colloquy about petitioner's sentence.

> Q . . . . The court will not be able to determine your guideline range until after that presentence report has been prepared and both you and your lawyer and the government lawyer have had an opportunity to challenge the facts that are set out in the report. That necessarily means that no one knows exactly now what your guideline range is.
> I'm sure your lawyer has told you before coming to court today where he calculates your guideline range will probably fall. He's done that, hasn't he?
> A Yes, your honor.
> Q You understand that in doing that he was exercising his best professional judgment as your lawyer?
> A Yes, your honor.
> Q And that if the numbers your lawyer has forecast for you happen to differ from those determined by the court on the date of your sentencing, that would not give you any right to change your mind and go back and plead not guilty and be tried by a jury. Do you understand that?
> A Yes, your honor.
> Q Do you have any questions that you would like to ask me about the sentencing guidelines?
> A No, your honor.

5

(Id. at 8-9.) At sentencing, counsel moved for a downward departure based on U.S.S.G. § 5K2.16, which the court denied. (8/4/14 Tr., DE # 69, at 24, 31.)

Petitioner cannot now claim that he was promised something about his sentence which does not appear in the terms of his plea agreement. Petitioner's Exhibits B and C do not prove that counsel made a promise about petitioner's sentence. If anything, those exhibits show that counsel tried to give petitioner an idea where his guideline range might fall and that counsel informed petitioner he intended to ask for a § 5K2.16 downward departure. (See Mot, Ex. B, DE # 75-5; id., Ex. C, DE # 75-6.) Petitioner's plea and appellate waiver will not be vacated on this ground.

Finally, petitioner contends that his plea and appellate waiver were not knowing and voluntary because counsel misadvised him about restitution. According to petitioner, he was concerned that "the plea agreement did not specify any amount that the Court may order in restitution." (Mem., DE # 75-1, at 7.) Counsel told him that it did not matter what amount the court might order and petitioner would only be made to pay restitution if he had the ability to pay. (Id.) Petitioner characterizes counsel's advice to him as he "should plead guilty and agree to pay restitution to victims of an offense of which he was not convicted." (Id.)

In his plea agreement, petitioner agreed "[t]o make restitution to any victim including any victim with respect to a Count dismissed as part of the agreement in whatever amount the Court may order, pursuant to 18 U.S.C. §§ 3663 and 3663A. Said restitution shall be due and payable immediately." (Pl. Ag., DE # 43, ¶ 2(b).) The court went over this term of the agreement at petitioner's plea hearing. (3/25/14 Tr., DE # 68, at 6, 12.) At sentencing, the court ordered petitioner to make restitution in a total amount of $267,005.25 to more than 70 victims.

6

Restitution was mandatory in this case. 18 U.S.C. § 3663A(a)(1), (c)(1)(B). Petitioner was ordered to pay restitution to victims of his mystery shopper, romance, retailer/re-seller, PayPal, and bank account takeover schemes, (see PSR, DE # 50, ¶¶ 10-22), all of which were part of petitioner's offense of conviction of conspiracy to commit mail, wire, and bank fraud, (see Super. Ind., DE # 32, ¶¶ 13-31). Petitioner was also ordered to pay restitution to one victim of his gift card scheme, which clearly underlies the conspiracy conviction, although it was not alleged in the superseding indictment. Even so, the court was permitted to order such restitution because petitioner agreed in the plea agreement to make restitution to "any victim." See 18 U.S.C. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."). Based on the foregoing, even assuming counsel gave petitioner incorrect advice about restitution, petitioner was not prejudiced thereby, and his plea will not be set aside on this ground.

Petitioner's second ground for relief is counsel failed to subject the prosecution's case to adversarial testing by failing to conduct any pretrial investigation, request an evidentiary hearing, move for exclusion of evidence, and challenge the legal qualification of grand jurors. (Mot., DE # 75, at 5.) In support of these contentions, petitioner points to the Presentence Report ("PSR") section concerning victims. (See Mem., DE # 75-1, at 9.) That section notes that the Probation Office mailed packets to those victims of petitioner's schemes and that the officer had only received responses from nineteen of the individual victims and eight packets were returned undeliverable. (PSR, DE # 50, ¶ 32.) Petitioner argues that if counsel had investigated, he would have negotiated the number of victims in line with what is set forth in this section of the PSR, rather than "50-250 as alleged in the plea agreement," and petitioner would not have

7

received a four-level sentencing guideline enhancement.  (Mem., DE # 75-1, at 9-10.)  The difference between the number of individual victim responses received and packets returned (twenty-seven) and the parties' agreement in the plea agreement as to the number of victims (between 50 and 250) does not in any way support an inference that counsel failed to conduct a pretrial investigation, let alone any prejudice.  That nineteen individual victims responded to probation and eight victims could not be located does not mean there were only twenty-seven victims.  More importantly, petitioner <u>agreed</u> in his plea agreement that there were between 50 and 250 victims for purposes of the four-level enhancement of U.S.S.G. § 2B1.1(b)(2)(B), (Pl. Ag., DE # 43, ¶ 5(c)), and his plea was knowing and voluntary.  At his plea hearing, the government recited the evidence that it would rely on to support petitioner's guilt.  (3/25/14 Tr., DE # 68, at 14-18.)  From that evidence, which incidentally petitioner agreed the government could prove, (<u>id.</u> at 18), the court could readily conclude there were at least 50 victims to warrant the four-level enhancement under § 2B1.1(b)(2)(B) (2013).  Therefore, even if counsel had failed to investigate sufficiently as to the number of victims, petitioner was not prejudiced thereby.

 Petitioner also contends two statements counsel made at petitioner's sentencing about the amount of loss demonstrate counsel's failure to investigate.  Those statements are "'[W]e (the defense) know there's some amount of loss but we think it's below the $400,000.00.  To be honest with the Court, we (the defense) do not know what the exact figure is.'"  (Mem., DE # 75-1, at 10 (quoting 8/4/14 Tr., DE # 69, at 3)).)  According to petitioner, the reason counsel did not know is because he did not investigate.  (<u>Id.</u>)  The court disagrees.  Counsel made the subject statements in conjunction with his overarching argument in support of an objection to the

8

amount of loss enhancement in the PSR.  (See 8/4/14 Tr., DE # 69, at 2-4, 14-15.)  In support of the written objection, counsel stated that review of the discovery did not substantiate the amount of loss set forth in the PSR.  (PSR, DE # 50, at 19.)  Counsel did not perform deficiently regarding investigation into the amount of loss.  Even if he had, petitioner cannot show that the court would not have imposed the amount of loss enhancement given the government's evidence against petitioner, and thus, petitioner suffered no prejudice in any event.

Petitioner further contends that counsel failed to test the prosecution's case by failing to file a motion to suppress, or request an evidentiary hearing on, (1) petitioner's cell phone text messages given during a protected proffer and (2) information obtained from petitioner during a debriefing which was "under coercive circumstances."  (Mem., DE # 75-1, at 11; see also Resp., DE # 86, at 18.)  According to petitioner, this evidence was the only evidence the government had to suggest a conspiracy occurred.  (Id.)  Assuming counsel was deficient in this regard, petitioner cannot show that the result of the proceeding would have been different. Petitioner does not suggest that if counsel had filed the motion, it would have been successful, and petitioner would have gone to trial.  Counsel objected to the subject evidence being used against petitioner to support sentencing enhancements on the ground that the evidence was protected by a proffer agreement, but the court overruled that objection.  (See 8/4/14 Tr., DE # 69, at 3-4, 12, 14-15, 16.)  The same result would have obtained if counsel had filed a motion to suppress the evidence, and therefore, petitioner was not prejudiced.

Finally, petitioner argues that counsel did not subject the prosecution's case to meaningful adversarial testing inasmuch as counsel failed to challenge the legal qualification of grand jurors.  (Mot., DE # 75, at 5.)  Specifically, petitioner claims that four of the grand

9

jurors were victims (or potential victims) of the same crimes with which petitioner was to be charged and that effective counsel would have obtained dismissal of the indictment on this basis. (Mem., DE # 75-1, at 13-14; Resp., DE # 86, at 20-24.)  To be legally qualified to serve as a grand juror, one must meet age and residency requirements and be proficient in English, among other things.  28 U.S.C. § 1865.  Any potential partiality or bias a person might have does not affect whether he or she is legally qualified to serve as a grand juror.  See id.; United States v. Robbins, No. 2:10CR00006, 2015 WL 2194908, at *2 (W.D. Va. May 11, 2015) (rejecting petitioner's § 2255 claim that grand jury was unconstitutionally impaneled because one of its members was biased).  Consequently, counsel was not deficient for failing to move to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 6(b).

Petitioner's third ground for relief challenges counsel's effectiveness regarding petitioner's speedy trial rights.  He claims that counsel failed to challenge the excludability of pre-indictment delay and requested frivolous continuances which gave the prosecution a tactical advantage.  (Mot., DE # 75, at 7; Mem., DE # 75-1, at 17; Resp., DE # 86, at 24.)  Regarding this claim, the court examines the pertinent procedural history of this proceeding.  On 29 March 2013, a criminal complaint was filed against petitioner charging him with mail fraud, and an arrest warrant issued on the same day.  At the time, petitioner was in state custody, and on 30 July 2013, he was arrested by federal authorities.  (DE # 13.)  On the same day, petitioner had his initial appearance.  Petitioner subsequently waived a preliminary and detention hearing. On 16 August 2013, the government and then-counsel for petitioner jointly moved for an extension of the time period to indict petitioner.  (DE # 16.)  The motion represents that the parties were engaged in pre-indictment discussions about issues in the case and states, "The

10

defendant, through his attorney, Robert E. Waters, consents to an extension of [the] time period to indict and voluntarily waives his right to indictment within thirty days up to and including October 28, 2013." (Id.) On 19 August 2013, the court granted the motion, allowing until 28 October 2013 for an indictment to be filed against petitioner and excluded the delay for Speedy Trial Act computation based on the ends of justice. (DE # 17.) On 24 October 2013, an indictment was filed against petitioner. (DE # 18.)

On 29 October 2013, then-counsel filed a motion to withdraw, which the court allowed the same day. (DE ## 21, 22.) The following day, new counsel filed a notice of appearance. Arraignment was scheduled for 2 December 2013. On 15 November 2013, counsel moved to continue arraignment on the grounds that the case was complex, resulting in voluminous discovery, which he needed additional time to review and discuss with petitioner. (DE # 29.) The court allowed the motion, excluding speedy trial time based on the ends of justice and continuing arraignment to 4 February 2014. (DE # 30.)

On 25 November 2013, a superseding indictment was filed against petitioner. On 20 December 2013, counsel moved to continue arraignment on the ground that discovery was ongoing and continued to be voluminous, necessitating additional time to review it and discuss it with petitioner who was being housed in a different city from counsel's office. (DE # 36.) Counsel stated in the motion, "The Defendant has consented to this motion and has agreed to an April, 2014 date[.]" (Id.) The court allowed the motion, excluding speedy trial time based on the ends of justice and continuing arraignment to 1 April 2014. (DE # 37.) Petitioner was actually arraigned earlier—on 25 March 2014—at which time he pled guilty pursuant to the aforementioned plea agreement.

11

Petitioner contends that counsel should have challenged the pre-indictment delay under the Speedy Trial Act. Pursuant to the Act, 18 U.S.C. § 3161(b), "the Government must charge a defendant by indictment or information within 30 days of his 'his arrest upon a federal charge' . . . ." United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005) (citation omitted). This provision is not triggered merely by the filing of a criminal complaint and the lodging of a detainer against the defendant. Id. at 595. Typically, it occurs when the defendant is under federal arrest or in federal custody. See id. However, in limited circumstances, Speedy Trial Act rights may be triggered even though the defendant is not actually in federal custody or arrested by federal authorities. Id. at 596. It is "triggered in those instances where the Government has knowledge that an individual is being held by state authorities only to answer to federal charges." Id.

Petitioner argues that he was being held by state authorities solely because of the federal detainer and therefore his speedy trial rights under § 3161(b) were triggered by the detainer being lodged on 1 April 2013. (Resp., DE # 86, at 25.) In support of this argument, petitioner claims that in open court, the State declared "that it was waiting on the Feds and therefore had lost interest in the case and could not proceed with prosecution on the charges." (Mem., DE # 75-1, at 16.) Accepting this statement as true, petitioner does not allege that the federal government knew that to be the case. Accordingly, petitioner's speedy trial rights under § 3161(b) were triggered upon his arrest on the criminal complaint on 30 July 2013, and any information or indictment should have been filed by 29 August 2013.

As noted previously, on the motion of government and petitioner's then-counsel, the time to indict petitioner was extended to 28 October 2013. Petitioner claims he did not consent to

12

the extension or any waiver of his rights. (Resp., DE # 86, at 26.) Recognizing that a defendant may not prospectively waive application of the Speedy Trial Act, Zedner v. United States, 547 U.S. 489, 503 (2006), the court notes that the delay in the time to file an indictment was not excluded on the basis of the represented waiver but rather based on the ends of justice. While the reasons for this finding were not set forth in the order, it is obvious that it was due to the parties' continuing pre-indictment discussions. Even if counsel had filed a motion to dismiss based on a Speedy Trial Act violation, the court would have included the reason on the record at the time it ruled on the motion, see id. at 508, and denied it. The filing of the indictment on 24 October 2013 was timely. Therefore, counsel was not deficient in failing to challenge it under § 3161(b).

Also, petitioner contends counsel should have challenged the pre-indictment delay on Sixth Amendment grounds. To prove a violation of the Sixth Amendment, "a defendant must show first that the Amendment's protections have been triggered by arrest, indictment, or other official accusation." Woolfolk, 399 F.3d at 597 (internal quotation marks and citation omitted). The right can be triggered with the filing of a detainer, warrant, and complaint. See id. In assessing whether the right was violated, the court considers four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Id. (citation omitted). "In addition to being a factor, the first inquiry is also a threshold requirement, because '[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'" Id. (citation

13

omitted). "The Supreme Court has counseled that 'postaccusation delay [is] presumptively prejudicial at least as it approaches one year.'" Id. (citation omitted) (alteration in original).

Here, the time between the filing of warrant and complaint (and presumably the detainer) on 29 March 2013 and the filing of the indictment on 24 October 2013 was approximately seven months. As this case was relatively complex and in light of the fact that the pre-indictment delay was well short of the presumptive one-year period, counsel was not deficient for failing to challenge the delay under the Sixth Amendment.

As for the continuances counsel requested *after* petitioner was indicted, the court finds that they were not frivolous and the delay occasioned thereby was properly excluded based on the ends of justice with appropriate findings in each order pursuant to 18 U.S.C. § 3161(h)(7)(A). As recounted above, petitioner's counsel moved to continue the arraignment only twice. Counsel provided a reasonable basis for continuance and did not act deficiently in this regard. Because the delay occasioned by the continuances was properly excluded and because the period from the filing of the complaint, 29 March 2013, to arraignment, 25 March 2014, was less than one year in this relatively complex case, neither the Speedy Trial Act nor the Sixth Amendment right to speedy trial were violated. Furthermore, even if petitioner did not consent to the motions, (see Mem., DE # 75-1, at 15), petitioner suffered no prejudice as a result.

Petitioner's final challenge concerns counsel's purported ineffectiveness at sentencing. Specifically, petitioner contends counsel was deficient in failing to: (1) "object to Court imposed restitution . . . since he [petitioner] was considered a minor participant"; (2) "alert the Court that there had been a sentence reduction agreement due to amount of loss and by which guilty plea was induced"; (3) "argue that [the] District Court ordered restitution for conduct[] that had been

14

presented as relevant conduct[]"; (4) "properly argue that probation swept too much conduct[] into its calculation of loss and restitution"; and (5) "move the Court to enforce the terms of the plea agreement (because the Government breached the plea agreement)." (Mot., DE # 75, at 8.) For the most part, the court's analysis of petitioner's other grounds for relief dispenses with these contentions.

To the extent it does not, the court addresses two arguments petitioner raises. First, there is no evidence that petitioner was a minor participant in the criminal schemes. Simply because he was the only defendant charged in the conspiracy does not equate with him being a minor participant. (See Mem., DE # 75-1, at 18.) Second, petitioner argues "that the Government breached the plea agreement through its repeated and inflammatory references to the defendant's given but profered [sic] incriminating information in its objections to pre-sentence report and at sentencing . . . ." (Id. at 19.) It is true that in the plea agreement, the government agreed "that self-incriminating information provided by the Defendant pursuant to this Agreement shall not be used against the Defendant in determining the applicable advisory Guideline range . . . ." (Pl. Ag., DE # 43, ¶ 4(f).) As recognized previously, at sentencing, counsel did object to the government's use of information obtained from petitioner that was protected pursuant to a proffer agreement. That counsel did not also say the information could not be used against petitioner under the plea agreement and by such use the government was in breach of the plea agreement makes no difference. Objecting based on the proffer agreement is essentially the same thing as arguing the government breached the plea agreement. And, the court overruled the objection. Had counsel moved to enforce the plea agreement, the same result would have obtained, and therefore, petitioner suffered no prejudice.

15

Petitioner has failed to sufficiently state any claim entitling him to relief. The government's motion to dismiss is ALLOWED, and the § 2255 motion is DISMISSED. Petitioner's motion for discovery is DENIED as moot. The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

This 11 January 2016.

                                               W. Earl Britt
                                               Senior U.S. District Judge